UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GREGORY P. BARNES, DAVID C. BOLLE, MARY D. WASSON, and JERRY M. CHAPMAN, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HERSHEY COMPANY,<br><br>Defendant. | Case No. 12-cv-01334 CRB (NC)<br><br>**ORDER RESOLVING DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 124, 136, 137 |

Pending before the Court are two joint discovery letter briefs, Dkt. Nos. 136 and 137, in which the parties continue to disagree about the proper boundaries of discovery at this stage of the case. District Court Judge Charles R. Breyer previously bifurcated discovery and permitted discovery to proceed only "as to the issue of waiver." Dkt. No. 105. Plaintiffs have made a request to vacate the bifurcation order, which is currently before Judge Breyer. *See* Dkt. No. 130. Accordingly, this order resolves the discovery issues presented in accordance with the limitations imposed by the bifurcation order.

**1.    Hershey's ESI Production**

The Court will first address the parties' disagreement about the methodology and scope of Hershey's ESI production.

Previously, this Court denied plaintiffs' requests to compel Hershey's production of documents and depositions as to Customer Sales Executives ("CSE") and Category Development Managers ("CDM") beyond the named plaintiffs, finding that the most useful discovery will be as to the plaintiffs, and that the usefulness of the discovery sought as to all CSEs and CDMs is outweighed by the burden of producing it. Dkt. No. 118. The Court noted that, with respect to document and deposition discovery regarding the employment separations of the plaintiffs, the parties have agreed that additional discovery is appropriate and are meeting and conferring to clarify document custodians, date ranges, and search terms. *Id.*

On March 14, 2014, the parties filed a joint discovery letter brief requesting that the Court resolve a dispute concerning their ESI Agreement. Dkt. No. 124. In the joint brief, plaintiffs assert that (1) Hershey should be required to produce all of the documents returned as "hits" after searching ESI using search terms to be agreed upon by the parties, without withholding any documents Hershey claims are irrelevant or non-responsive; and (2) Hershey should be ordered to produce all files from the hard drives of plaintiffs' Hershey-owned computers, or alternatively, all of their email files, likewise without withholding documents for lack of relevance or responsiveness. *Id.* In response, Hershey argues that, as the parties have stipulated in the ESI Agreement, Hershey should be allowed to review the "hits," including plaintiffs' emails, in order to limit the production to responsive documents within the current scope of discovery, subject to court review in case of a dispute. *Id.* Hershey also requests that the Court order plaintiffs to withdraw request for production No. 32 for all documents that hit any search term, on the basis that it seeks to avoid the parties' ESI Agreement. *Id.*

On April 16, 2014, the Court held a hearing on the ESI Agreement dispute. Dkt. No. 133. The Court ordered plaintiffs' request for production No. 32 stricken and directed the parties to meet and confer further regarding the appropriate search terms to be used by Hershey in producing ESI considering (1) the estimated volume of documents and the

Case No. 12-cv-01334 CRB (NC)
ORDER RE: DISCOVERY DISPUTES      2

associated burden of search and production, and (2) the usefulness of the discovery on the issue of waiver. *Id.*

On May 7, 2014, the parties filed a joint letter brief reporting on the status of their dispute regarding Hershey's ESI production, accompanied by proposed orders. Dkt. Nos. 137, 137-1, 138-2. The dispute centers on whether Hershey should be ordered to search 27 custodians for the names of the 9 plaintiffs and 12 additional substantive terms, as plaintiffs request, or if it would be appropriate to "link" the names and substantive terms so that a document will only be considered a "hit" if it contains both a name and a substantive term. *Id.* Hershey's proposed search methodology would return 86,564 documents that would be subject to further review for privilege and responsiveness, while plaintiffs' proposed terms would result in 365,751 "hits," according to plaintiffs, or 705,453 actual documents if counting attachments, according to Hershey. *Id.*

Based on the parties' submissions, the Court finds that plaintiffs' proposal to search the ESI for the names of the plaintiffs without any other substantive limitation is not tailored to discover evidence regarding waiver or the existence of a group termination program as to plaintiffs. The Court concludes that, based on the current record and in light of the limited scope of discovery at this stage of the case, the usefulness of the disputed discovery sought by plaintiffs is outweighed by the burden of producing it. Accordingly, the Court orders as follows:

Hershey must apply the terms listed in Exhibit A to its proposed order, Dkt. No. 131-1, which link the names and substantive terms that plaintiffs have selected, against the agreed upon data sources. Specifically, a document will only be considered a "hit" if it contains both a name and a substantive term, as set forth in Exhibit A. Hershey will then review all of the "hits" to determine if they are responsive to any of plaintiffs' requests for production. As set forth in the parties' ESI Agreement, "[d]eterminations of discoverability, relevance and privilege shall be made, in the first instance, by the producing party subject to potential court review." *See* Dkt. No. 128 ¶ 1(c). Hershey must produce all

"hits" that are responsive to plaintiffs' requests for production, but does not have to produce documents returned by a search term if that document is responsive only to a request for production that the Court has already limited or stricken.  In addition, if a document returned as a "hit" is relevant to the issue of waiver or the existence of a group termination program as to plaintiffs, Hershey must produce it even if it is not responsive to plaintiffs' requests for production.

After plaintiffs have an opportunity to review the results of Hershey's production of documents pursuant to the terms of this order, should plaintiffs contend that the production is insufficient, the parties must meet and confer to determine whether, and what, further production may be appropriate.  Any disputes on this issue that cannot be resolved by the parties must be presented to the Court by a joint letter brief filed no later than 14 days of the date when plaintiffs give notice to Hershey that its production is insufficient.

The files from the hard drives of plaintiffs' Hershey-owned computers will be treated the same way as other ESI for the purposes of this dispute and be subject to the same process outlined above.

### 2. **Hershey's Easter Weekend Production**

In the May 7 joint letter brief regarding ESI, plaintiffs raise an issue regarding a document production made by Hershey on Easter Weekend, immediately before depositions.  Dkt. No. 137 at 5.  Plaintiffs ask that the Court order Hershey to "(1) identify whether the Easter Weekend and subsequent document productions were made from ESI harvested pursuant to the ESI Agreement and/or from some other ESI source; (2) what custodians were searched for these productions; (3) what search terms or other criteria was used to obtain "hits"; and (4) how many "hits" were obtained for these productions." *Id.* Hershey responds that it has already provided this information in that it "identified the source of the documents produced, informed Plaintiffs the pre-deposition productions were from the paper and electronic documents collected directly from the custodians and not their emails, and that all such documents collected from those custodians were reviewed." *Id.* at

3. Hershey further asserts that because it did not limit its review of these documents by choosing specific custodians or using search terms, plaintiffs' questions regarding search terms or "hits" are not applicable. *Id.*

The Court finds that this is the type of dispute that the parties should be able to resolve without the need for Court intervention. If plaintiffs contend that the information provided by Hershey is insufficient, they must meet and confer further with Hershey, and may seek to obtain the information through more formal means such as an interrogatory or a deposition under Federal Rule of Civil Procedure 30(b)(6) if necessary.

### 3. **Plaintiffs' Requests for Discovery Regarding RIF, Reorganizations, and Like Corporate Events**

In addition to the letter brief regarding ESI, on May 7, 2014, the parties filed a second joint letter brief in which plaintiffs ask that the Court order Hershey to answer written discovery related to (1) reductions in force ("RIF") information from 2009 through 2011; and (2) reorganizations, realignments and similar corporate events from 2009 through 2011. Dkt. No. 136 at 3. The Court finds that this dispute is suitable for resolution without a hearing.

With respect to the first category of information, plaintiffs acknowledge that they have already obtained discovery from Hershey about the overall headcount of CSEs and CDMs from 2007 through 2012, by year. *Id.* at 1. Plaintiffs now seek to discover how many of the reduced headcount are older CSEs and CDMs as opposed to CSEs and CDMs 39 and younger during the period 2009 through 2011. *Id.* at 1-2.

As for the second category, plaintiffs seek that the Court order Hershey to answer an interrogatory and produce documents to (1) "[i]dentify any realignment, restructuring or reorganization that impacted the [CSE] and/or [CDM] positions"; and (2) state and identify whether there were any "exit incentive" plans or "termination programs" applied to any CSEs or CDMs for the years 2009 through 2011. *Id.* at 2. In response, Hershey asserts that it has or will provide Rule 30(b)(6) testimony on realignments, etc. that affected the

plaintiffs, and that it has also offered to provide information on all other restructurings, realignments, etc. (even if they did not affect the plaintiffs) that resulted in terminations between 2009 and 2011 via interrogatory responses and document productions. *Id.* at 4.

The Court agrees with Hershey that plaintiffs' requests for information regarding (1) the ages of terminated CSEs and CDMs; and (2) all restructurings, realignments, etc., regardless of whether these changes resulted in terminations, are not reasonably tailored to discover information relevant to the validity of the releases signed by plaintiffs or to whether their terminations were part of a group termination program. *Id.* at 4. The Court finds that the disputed discovery requests are cumulative to other discovery that has or will be provided by Hershey, exceed the limited scope of discovery ordered by Judge Breyer, and their burden exceeds their likely benefit considering the needs of the case at this stage. Accordingly, plaintiffs' requests for relief are denied.

Any party may object to this non-dispositive discovery order within 14 days under Federal Rule of Civil Procedure 72(a).

IT IS SO ORDERED.

Date: May 16, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge