1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

GREGORY P. BARNES, DAVID C.
BOLLE,  MARY D. WASSON, and JERRY
M. CHAPMAN, on their own behalf and on
behalf of others similarly situated,

        Plaintiffs,

      v.

THE HERSHEY COMPANY,

        Defendant.

Case No. 12-cv-01334 CRB (NC)

**ORDER ON ESI DISPUTE**

Re: Dkt. Nos. 161, 194

     Pending before the Court is a joint discovery letter brief concerning Hershey's

Electronically Stored Information ("ESI") production.  Dkt. No. 161.  After holding a

hearing on this discovery dispute, the Court ordered the parties to continue to meet and

confer on the ESI issues and file a joint status update.  Dkt. No. 181.  The parties filed their

updated statement of the dispute on September 26, 2014.  Dkt. No. 194.  On September 30,

2014, the Court issued an order setting forth its tentative ruling and giving Hershey another

opportunity to propose narrowed search terms.  Dkt. No. 196.  Having reviewed Hershey's

status report and proposal, Dkt. Nos. 203-204, the Court now issues this order resolving the

ESI dispute.

     The parties executed an ESI agreement in February 2014.  *See* Dkt. No. 128.  The ESI

agreement provides, in relevant part:

> As data sources are identified, the party responding to discovery will run the initial agreed upon search terms against the reasonably accessible information collected for a mutually agreed to and selected representative custodian to gauge the magnitude of the universe of documents retrieved by such search terms and the attendant burden of reviewing and producing the non-privileged, reasonably accessible information from the search. *To the extent that the search results in a significant number of documents, a substantial portion of which are nonresponsive, the Parties will meet and confer to narrow the search terms.* The Parties envision an iterative process whereby counsel and appropriate information technology personnel together review the results of the initial searches. If the Parties cannot reach an agreement regarding the revisions to the search terms, either party may present the dispute to the Court for resolution.

*Id.* § 1(b) (emphasis added).

The agreement further provides that "[t]he Parties agree that the fact that a hit for a document that is captured by the application of any agreed-upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. *Determinations of discoverability, relevance and privilege shall be made, in the first instance, by the producing party subject to potential court review*." *Id.* § 1(c) (emphasis added).

The initial search terms agreed-upon by the parties consisted of: (1) "[t]he names of the approximately thirty Customer Sales Executives [CSEs] and Category Development Managers [CDMs] who fell within the stipulated collective action notice in this action, including the nine plaintiffs; (2) the "[n]ames of those who took over Plaintiffs' positions or responsibilities"; (3) the "[n]ames of other CSEs and CDMs involuntarily severed who were 40 years old or older when involuntarily severed"; and (4) additional non-name terms. *Id.* § 4(d)(2).

While discovery was still bifurcated, the Court resolved a previous dispute about Hershey's ESI production by ordering Hershey to search by linking name terms with non-name terms and produce all "hits" that are responsive to plaintiffs' requests for production. Dkt. No. 139. This resulted in Hershey's review of approximately 86,000 documents and production of approximately 2,200 documents as responsive. *See* Dkt. No. 161 at 2-3.

District Court Judge Charles R. Breyer later lifted the bifurcation of discovery, ordered the parties "to proceed with discovery on all issues," and vacated the undersigned's order "to the extent the Order limits discovery to the issue of waiver." Dkt. No. 148.

Plaintiffs now seek the following relief:

(1) to compel Hershey to "produce the approximately 85,000 documents which were 'hits' based on the Court's prior order permitting Hershey's request of linkage of name search terms to substantive search terms" because they "are doubtless responsive to Plaintiffs' pending discovery requests";

(2) in lieu of searching the nine plaintiffs' custodian files, to compel Hershey to "produce all emails sent to or from the Plaintiffs from twelve months prior to the Plaintiffs' terminations to the date of their terminations"; and

(3) to compel Hershey to search the following unlinked search terms within the 28 custodians (which remain after the nine plaintiffs are removed as search custodians based on part 2): (1) the names of the nine Plaintiffs; (2) the names of non-opt-ins; (3) "headcount" and/or "head count"; (4) tenure; and (5) calibrat*. Dkt. No. 194 at 1-2.

With respect to part 2 of the requested relief, Hershey responds that it "offered to compromise with Plaintiffs by providing these documents as part of a global compromise regarding ESI issues." *Id.* at 4. The Court grants the relief requested in part 2.

As to part 1, Hershey contends that, based on its review, "over 91 percent" of the approximately 85,000 documents "are not responsive to any of Plaintiffs' requests, regardless of the bifurcation order." *Id.* Hershey further states that it is "in the process of returning to the 85,000 hits to produce documents responsive to Plaintiffs' new requests for production." However, neither the parties' ESI agreement nor the discovery rules require Hershey to produce documents that are not responsive to any of plaintiffs' discovery requests. If plaintiffs contend that Hershey has withheld responsive documents, they have not established a basis for such a contention. Accordingly, the Court orders Hershey to

produce all documents from the approximately 85,000 "hits" that are responsive to any of plaintiffs' requests, considering that discovery is no longer bifurcated. Hershey is not required to produce the documents just because they are "hits" without regard to responsiveness.

As to part 3, the Court's prior order directing Hershey to search by linking names and non-name terms was issued in consideration of the limited scope of discovery at the time. *See* Dkt. No. 139. Discovery now proceeds on all issues. Recognizing that, Hershey has "indicated its willingness to produce additional ESI, subject to an agreement between the parties (or an order by the Court) establishing the parameters of such a production." Dkt. No. 161 at 5. Hershey states that "Hershey's review of Plaintiffs' original search terms, which included all of the Plaintiffs' and non-opt-ins names, revealed that nearly all of the 'hits' were non-responsive." Dkt. No. 194 at 4. Hershey contends that the ESI agreement "spells out a solution for a situation where a set of search terms return too many non-responsive documents," which is for the parties to meet and confer to narrow the search terms. *Id.* at 5. However, despite ample opportunity to meet and confer, the parties have not reached an agreement about narrowing the terms.

In response to the Court's tentative ruling, Hershey filed a status report, asserting that the "hits" generated by plaintiffs' proposed search terms have a very low level of responsiveness (less than one percent), based on Hershey's review of a random sample of 1% of the hits. Dkt. No. 204 at 1-2. Hershey argues that, even without conducting a review for responsiveness, the cost "to process and produce" the documents would be $231,569.30, and that this cost is not justified given the limited benefit of the requested discovery. *Id.* at 2. Hershey's counter-proposal is to search only by using the substantive terms proposed by plaintiffs ("headcount" and/or "head count," "tenure," and "calibrat*") and not the name terms. *Id.* at 3.

The Court is not convinced that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy,

the parties' resources, the importance of the issues at stake in the action, and the importance

of the discovery in resolving the issues." *See* Fed. R. Civ. P. 26(b)(2)(C).  While Hershey

might be correct that the "hits" contain a large number of nonresponsive documents, this is

a risk inherent in using search terms.  As the party most knowledgeable with its own

documents, Hershey is in the best position to propose a set of terms that would narrow the

scope of the search.  Hershey has not done so, insisting instead that the majority of the

terms proposed by plaintiffs are overbroad and should not be used.  Furthermore, while the

Court acknowledges that the cost estimated by Hershey "to process and produce" the

documents is substantial, the Court is not convinced that this estimate is based on the most

efficient method of production.  The Court orders Hershey to search the terms as proposed

by plaintiffs in part 3 of the joint status report, Dkt. No. 194 at 2.  Hershey may review the

"hits" for responsiveness and privilege, if it so wishes, or produce all "hits" to minimize its

costs.  Hershey must produce all responsive documents by November 10, 2014.

Finally, in its September 5 discovery order, the Court took under submission

plaintiffs' request to compel Hershey to produce all documents regarding the employment

separations for any CSE or CDM who was age 40 or older and involuntarily terminated

from employment with Hershey from January 1, 2012, to the present (Request for

Production No. 16).  *See* Dkt. No. 182 at 9-10.  The Court orders Hershey to produce all

documents responsive to this request that are captured within the "hits" generated by the

search terms proposed by plaintiffs in part 3 of the joint status report, Dkt. No. 194 at 2.

Any party may object to this non-dispositive discovery order within 14 days under

Federal Rule of Civil Procedure 72(a).

IT IS SO ORDERED.

Date: October 9, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge